IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HENRY LEE JONES, EX-0315, )
    Petitioner, )
     )
    v. ) 2:10-cv-1[1]619
     )
BRIAN V. COLEMAN, et al. )

REPORT and RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the petition of Henry Lee Jones for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Henry Lee Jones, an inmate at the State Correctional Institution at Fayette has presented a petition for a writ of habeas corpus.

Jones is presently serving a twenty to eighty year sentence imposed following his conviction, by a jury, burglary, criminal trespass, aggravated assault, simple assault, involuntary deviate sexual intercourse and conspiracy to commit rape, burglary, aggravated assault and indecent deviate sexual intercourse at No. 758 Criminal 2001 in the Court of Common Pleas of Mercer County, Pennsylvania. This sentence was imposed on January 31, 2002.[2]

An appeal was taken to the Superior Court in which the issues presented were:

I. The trial court erred in sustaining the Commonwealth's objection to the defendant's cross-examination of the alleged victim pertaining to her belief that an ex-boyfriend had a history of drugging and raping other women.

II. The trial court erred in overruling the defendant's objection regarding the rehabilitation of Commonwealth witness Randy Norris through the reading into the record of an interview transcript by detective Michael Menster, the court also

---

[1]

[2] See: Petition at ¶¶ 1-6.

1

erred in admitting into evidence a copy of said transcript for the jury's consideration.

III. The trial court erred in denying the defendant's requested point for charge pertaining to "false in one, false in all" testimony.

IV. The trial court erred in denying the defendant's requested point for charge pertaining to the credibility of Commonwealth witness Randy Norris and his alleged use of drugs and alcohol on the night of the incident.[3]

On May 6, 2004, the judgment of sentence was affirmed.[4] An application for leave to appeal to the Pennsylvania Court was filed raising these same issues,[5] and on December 27, 2004, leave to appeal was denied.[6]

Jones then sought post-conviction relief in a petition filed on August 1, 2005. The trial court directed that appointed counsel file an amended petition which he failed to do and no further action was taken until the petitioner filed a state habeas corpus petition on May 12, 2009.[7] The court determined that the latter petition was indeed a post-conviction petition the filing of which was time-barred under the Pennsylvania post-conviction relief act. Accordingly, on October 29, 2009, the court dismissed the "writ of habeas corpus seeking post-conviction relief" as time barred.[8]

In his issues complained about on appeal, the petitioner contends he is entitled to relief as a result of:

---

[3] See: Exhibit O to the answer.
[4] See: Exhibit S to the answer.
[5] See: Exhibit T to the answer.
[6] See: Exhibit V to the answer.
[7] However, in the interim Jones filed a federal habeas corpus petition at No. 08-752. The latter petition was dismissed on August 27, 2008 for failure to exhaust state court remedies and a certificate of appealability was denied by the United States Court of Appeals for the Third Circuit on March 23, 2009.
[8] See: Exhibit TT to the answer. Interestingly, and worth noting is that originally, Jones had filed a timely post-conviction petition. The court then directed counsel to file an amended petition, but counsel failed to do so. While there is no explanation for the lapse of time that occurred eventually over four years later Jones filed a pro se habeas corpus petition which the court treated as a post-conviction petition and then dismissed the latter as time barred. However, on October 29, 2009, the same day the habeas/post-conviction petition was dismissed the court ordered counsel to file an amendment to the original post-conviction petition filed on August 1, 2005 (Exhibit UU). On November 10, 2009, the petitioner submitted a pro se notice of appeal challenging the dismissal of his habeas/post-conviction petition (Exhibit VV). An amended counseled post-conviction petition was filed on behalf of Jones on November 30, 2009 (Exhibit WW) and the latter was dismissed on January 11, 2010 as a result of lack of jurisdiction due to the pendency of the appeal and for this reason continuing the matter generally (Exhibit YY). As of the filing of this Report and Recommendation no further action has occurred in the state court on the properly filed original post-conviction petition.

1. The failure of the Court to have established subject-matter-jurisdiction upon the State's prosecrutrix's failure to have identified the petitioner as her attacker who had broken into her apartment and attacked her on 12 July 200 (sic).

2. The failure of Mercer County to have identified your petitioner; and the court's imposing an unlawful sentence upon him that violates the state constitution at Article I, Section 10…[9]

In its appellee's brief, the Commonwealth sets forth:

The trial court dismissed Jones' PCRA petition because it was untimely filed, and as such, had no authority to address the underlying claims contained therein. Jones has not appealed the finding that the PCRA was untimely. Instead, he has only raised the substantive issues of his PCRA petition. Where the trial court found the petition to be untimely and Jones has not appealed said finding, this honorable Court also lacks the power to consider the issues raised by Jones.[10]

The Superior Court determined that the conclusion that the habeas/post-conviction was untimely was correct and affirmed the denial of relief and leave to appeal was denied by the Pennsylvania Supreme Court on November 1, 2010.[11]

Jones now comes before this Court and argues in support of his claim for relief that:

1. He was denied the effective assistance of counsel at all stages of the prosecution regarding both the sentence imposed and the failure of the prosecutrix to identify him as her attacker.

2. He was denied the effective assistance of counsel when counsel failed to object to the sentencing court's subject matter jurisdiction resulting from the failure of the prosecution of have the victim identify petitioner as her attacker.

3. Counsel was ineffective for failing to object to the prosecution by criminal information in violation of the state constitution barring prosecution for an indictable offense by information.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the

---

[9] See: Exhibit XX to the answer.
[10] See: Exhibit BBB to the answer.
[11] See: Exhibit CCC to the answer and Docket CP-43-CR-758-2001.

existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable*

*application* of, clearly established Federal law, as determined by the Supreme Court of the United States...

> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

Since the denial of leave to appeal on November 1, 2010, over four months have elapsed and no further action has occurred on Jones' post-conviction petition.

> Exhaustion … is not a jurisdictional matter but a matter of comity … federal courts need not defer to the state judicial process when there is no appropriate remedy at the state level *or when the state process would frustrate the use of an available remedy*… We have held that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable … The existence of an inordinate delay does not automatically excuse the exhaustion requirement, but it does shift the burden to the state to demonstrate why exhaustion should still be required.

Lee v. Stickman, 357 F.3d 338, 341 (3d Cir.2004)(internal citations omitted and emphasis added).

As the record clearly demonstrates, Jones filed a timely post-conviction petition on August 1, 2005. Thereafter, the petition apparently fell into a black hole and now, five and a half years later it is still pending. As the Court of Appeals has made clear, it is the remedies and not the petitioner that are to be exhausted. In its response, the Commonwealth has failed to identify any legitimate reasons why the exhaustion requirement should be imposed. For this reason, it appears inappropriate to impose the exhaustion requirement and appropriate to look to the merits of the petition.

The background to this prosecution is set forth in the May 6, 2004 Memorandum of the Superior Court quoting the trial court's factual summation:

> In the early evening hours of July 11, 2000, around 6:00 PM, the victim … left her row house apartment at the public housing complex [in] Sharon, PA, to go to

Brookfield, Ohio, just adjacent to Sharon, Pennsylvania. She remained there until around 10:00 PM when she returned to her residence with her 2-year-old daughter…. Around four[,] neighbor girls came over and they played cards for a short while. Joining the group were some 5 or 6 males. One of the males was the co-Defendant Randy Norris, ["Norris"] who the victim did not know personally. All in all[,] the victim estimated the total number of people at her apartment to be between 6 and 8. Apparently[,] one or more of the males became rude and the victim, who had become tired, ordered her guests out of her apartment, put her daughter to bed in one of the two second floor bedrooms and came back downstairs. She then talked on the telephone with her fried "Brian" for around two hours. During the conversation with Brian she heard walking sounds upstairs and, with Brian still on the telephone, she got a pair of scissors and went upstairs. She checked the area[,] but not the bedroom closet. She came back downstairs and eventually she fell asleep;. For some unknown reason she woke up to see "a black man, kind of heavy set, well not heavy set, but kind of big; that's all I seen. I didn't see the face. I seen the build and the shirt." She did say that the man was not Randy Norris and she had never seen [Jones] before the night's event. The man then charged the victim, placed his hands over her eyes and mouth. She passed out. She woke up face down in great pain, "I knew he was shoving something harsh, because the pain was very severe, but I didn't know what it was at the time." The assailant then pulled her head back and strangled her. She passed out again to wake around 5-6 AM. She then found the handle of her broom from her residence had been inserted into her vagina. She removed the instrument and called her mother. Her mother and the police arrived and she was taken to the hospital. She had strangulation marks around her neck and both her eyes were completely black. From the pictures and the testimony, she had been badly mauled, including raped and sodomized.

At the trial the Commonwealth presented [Norris], an illiterate, mentally retarded individual, as a witness for the Commonwealth… He testified that on the 11th[,] he had encountered [Jones], his cousin, at his cousin Jean's residence. [Jones] asked Norris if [Norris] knew some girls who he could hang out with. Norris told him about [the victim]. Later that evening [Jones] and Norris went to the [victim's housing] complex, Norris pointed to the victim's residence and [Jones] went around the building toward the back door. About 10 minutes later [Jones] came out of the residence and told Norris to come in. When [Norris] got into the residence he saw the victim, naked and laying face up on the couch. [Jones] then told Norris to "hit it." Norris took this command to indicate that he should have sexual relations with the victim and he did while she was unconscious. While he was having intercourse [Jones] was in the same room by the television set. Norris testified he stopped when he heard a child cry and [Jones] said "let's go." Norris left the residence and went out to the car. [Jones] remained in the apartment for an additional 5 minutes. He then jogged back to the car and said "Don't say nothing about what happened." They then went to a relative to get some money and then to Paul Mohammad, [Norris's] Social Security Disability representative payee, to get money. Then the pair left for Michigan. After his arrest[,] Norris was confined

in the Mercer County Jail and, although illiterate, executed an inculpatory statement, exculpating [Jones] who was also confined in the same facility in a cell just below [Norris]. It appeared that the document was prepared by [Jones]. The document was offered as evidence by the defendant.[12]

In support of his petition here, Jones contends he is entitled to relief on the ground that he was denied the effective assistance of counsel as a result of the prosecutrix's failure to identify him as her attacker and for failing to object to the prosecution by way of information when the state constitution requires prosecution by indictment. As can be seen from the state pleadings, the petitioner has attempted to raise this first issue in his appeal from the denial of post-conviction relief, but had failed to raise the issue of prosecution by indictment in any of the state court proceedings.

> In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:
> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because no such showing is made here, the petitioner has defaulted the available state court remedies on the latter issue and no further consideration of this issue is warranted here.[13]

Thus the issue before this Court is whether or not the petitioner was denied the effective assistance of counsel as a result of the prosecutrix's failure to identify him as his attacker and his being sentenced as the perpetrator.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as

---

[12] See: Exhibit S to the answer at pp.1-3.
[13] We note that even if properly before this Court, the matter is raised exclusively as a matter of state law and for this reason not subject to consideration here. Waddington v. Saransad, 129 S.Ct. 823, 832 n.5 (200)9). Additionally, Pennsylvania permits prosecution by way of information as a result of the 1973 amendment to the Art.I Sect.10 of the Pennsylvania Constitution. See also: Pa.R.Crim.P. 103, definition of "information".

to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

As noted above, at trial the prosecutrix failed to identify Jones as her attacked, but the prosecution's case relied on the testimony of Norris who clearly implicated the petitioner in the events charged. While the petitioner attempted to discredit Norris' testimony by introducing an exculpatory document created by Jones, clearly this created a matter of credibility which is for the exclusive resolution of the fact finder. Marshall v. Lonberger, 459 U.S. 422 (1983); Studebaker v. Uribe, 2009 WL 2601241(C.D.Cal.2009).

Finally we note that the petitioner argues that counsel was ineffective at the time of sentencing. Provided the sentence imposed is within the statutory maximum, there is no basis for a collateral attack . Bozza v. United States, 330 U.S. 160 (1947); LaBoy v. Carroll, 437 F.Supp.2d 260 (D.Del. 2006). Here, the petitioner was convicted of burglary, criminal trespass, aggravated assault, simple assault, involuntary deviate sexual intercourse and conspiracy to commit rape, burglary, aggravated assault and indecent deviate sexual intercourse. At least six of these offenses are classified of first degree felonies punishable by imprisonment on each count for up to twenty years.[14] On January 31, 2002, he was sentenced to a term of twenty to eight years or well within the statutory maximum.[15]

Thus, because the conviction resulted from the credibility determination made by the jury, and the sentence imposed was within the statutory maximum, counsel cannot be deemed to have been ineffective.

---

[14] 18 Pa.C.S.A.§1103.
[15] See: Exhibit G to the answer.

Because there is no demonstration that the petitioner's conviction was obtained in violation of any law as expounded by the United States Supreme Court, he is not entitled to relief here. Accordingly, it is recommended that the petition of Henry Lee Jones for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Within the time specified in the Notice of Electronic Filing, any party may serve and filed written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond. Failure to respond will be construed as concurrence in this Report and Recommendation.

Respectfully submitted,
s/ Robert C. Mitchell
United States Magistrate Judge